IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-0669-13




GREGORY THORNTON, Appellant

v.

THE STATE OF TEXAS




ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE SEVENTH COURT OF APPEALS
LUBBOCK COUNTY



           Price, J., delivered the opinion of the Court in which Keller, P.J., and
Womack, Keasler, and Hervey, JJ., joined. Keller, P.J., filed a concurring
opinion. Cochran, J., filed a dissenting opinion in which Meyers and Johnson, JJ.,
joined. Alcala, J., filed a dissenting opinion in which Meyers, Johnson, and
Cochran, JJ., joined.

OPINION 
           After a jury trial, the appellant was convicted of the third-degree felony offense of
tampering with evidence, on a theory of concealment,


 for reaching into his pocket, pulling
out a crack pipe, and dropping it to the ground in the presence of two police officers.


 On
appeal, the Seventh Court of Appeals deemed the evidence to be insufficient to support a
conviction for tampering with evidence by concealment because, with respect to the element
of concealment, the evidence showed that “at least one of the officers on the scene . . . was
aware of the presence of the item alleged to have been concealed” at all times.


 Accordingly,
it reversed the judgment of the trial court and ordered that the defendant be acquitted.


 
           After this Court, on initial discretionary review, remanded the cause for the court of
appeals to consider reforming the judgment to reflect a conviction for attempted tampering
with evidence,


 the court of appeals, in a published opinion, explicitly declined to do so.


 We
granted the State’s petition for discretionary review to address three issues relating to the
court of appeals’s opinion on remand: 1) Whether the court of appeals erred to hold that the
State failed to “preserve” the issue of reformation; 2) Whether the court of appeals erred to
rule that reformation may be used only to reform the “aggravating elements” of an offense;
and 3) Whether the court of appeals erred to conclude that there is insufficient evidence to
support a conviction for attempted tampering with evidence. We will reverse.
I. FACTS AND PROCEDURAL POSTURE
           On April 11, 2008, Lubbock Police Officers Meil and Roberts, dressed in plain clothes
and driving an unmarked car, were assigned to burglary patrol in a residential neighborhood. 
At approximately 7:30 a.m., as “[t]he sun was coming up,” Meil and Roberts spotted the
appellant and a female companion walking in the middle of a street that was lined on either
side by an unobstructed sidewalk. Seeing this, Roberts drove toward the curb in order to cite
the appellant and his companion for violating the “Use of Sidewalk” provision of the Texas
Transportation Code.


 As the officers’ vehicle was pulling over, the appellant and his
companion stepped from the street onto the sidewalk and ultimately continued to walk with
their backs to the officers’ car.
           By the time Meil and Roberts exited their vehicle, the appellant and his companion
were approximately ten to fifteen feet away. After stepping onto the sidewalk, the officers
ordered the appellant and his companion to stop. As the appellant turned around, Meil and
Roberts—now twenty feet from the appellant—identified themselves as police officers and
showed the appellant their badges and sidearms. Apparently realizing that the two men in
front of him were police officers, the appellant reached into his pocket and dropped a small
object that broke when it hit the sidewalk, producing the distinctive sound of shattering glass. 
After dropping the object, the appellant approached the officers. The broken pieces of the
object remained in the middle of the sidewalk where the appellant had dropped it.
           Because of his position on the sidewalk, Meil did not actually see the appellant drop
the object. Roberts, on the other hand, never lost sight of the object from the moment the
appellant removed it from his pocket. Roberts, having his own suspicions as to the nature
of the object, directed Meil to inspect it. Based on its shape, contents, and the presence of
burn marks, Meil was able to confirm that the object was, in fact, a crack pipe. The officers
then arrested the appellant for possession of drug paraphernalia,


 and he was ultimately
charged by indictment with tampering with evidence by concealment.
A. At Trial
           The appellant exercised his right to a jury trial on guilt-innocence, but elected to have
the trial court assess punishment. The State’s only witnesses at the guilt phase were Meil and
Roberts. During the course of direct examination, Roberts confirmed that the appellant had
“stealthfully reached in [his pocket], pulled [the pipe] out palming it, and then dropped it”
as he walked toward the officers. While cross-examining Roberts, defense counsel directed
him to re-enact the appellant’s precise movements when he reached into his pocket and
dropped the pipe. When both parties rested and closed, the appellant, seizing on the fact that
Roberts testified that he had never lost sight of the crack pipe, asked the trial court to instruct
the jury as to the lesser-included offense of attempted tampering with evidence.


 The State
made no argument opposing the appellant’s proposed charge, but the trial court nevertheless
rejected it. After deliberation, the jury returned a verdict of guilty on the charge of tampering
with evidence by concealment, and the appellant was sentenced by the trial court to a forty-five year term of confinement.



B. On Appeal
           On his initial appeal to the court of appeals, the appellant argued that the evidence
upon which the jury relied to convict him was legally insufficient to establish the element of
concealment. The State responded, first, that the crack pipe was concealed from Roberts,
however momentarily, when the appellant “palmed” the pipe as he was removing it from his
pocket; and second, that even if Roberts had a clear view of the crack pipe at all times, Meil
did not—and that on the basis of the appellant’s successful concealment of the evidence from
the view of Meil, the appellant’s conviction was sufficiently supported by the evidence and
should be affirmed. The court of appeals disagreed with the State on both grounds. As to
the first ground, the court of appeals simply disputed the State’s claim that the pipe was out
of Roberts’s view, even for a moment;


 as to the second, the court reasoned that, since “at
least one of the officers on the scene . . . was aware of the presence of the item alleged to
have been concealed,” case law suggests that “[one] officer’s awareness of evidence is
imputed to other officers.”


 Accordingly, it reversed the judgment of conviction and
rendered a judgment of acquittal as to the tampering charge.



           During the pendency of that appeal, however, and before the court of appeals issued
its opinion, we issued our own opinion in Bowen v. State.


 In Bowen, we held that a court
of appeals, upon finding the evidence supporting a conviction to be legally insufficient, is
not necessarily limited to ordering an acquittal, but may instead reform the judgment to
reflect a verdict of guilty on a lesser-included offense—even when no lesser-included
instruction was given at trial. In light of this holding, in its initial petition for discretionary
review, the State asked this Court to vacate the court of appeals’s judgment in this case and
remand the cause for “that court to consider the effect of Bowen, if any, on its reasoning and
analysis[.]”


 We granted the State’s request.



           On remand, the court of appeals gave three reasons why it considered reformation of
the judgment to reflect a conviction for the lesser offense to be inappropriate for this case. 
First, the court of appeals held that “the State waived any error with respect to the trial
court’s failure to submit a lesser-included offense” when it “stood idly by as the trial court
denied Appellant’s request for one.”


 Second, and “[n]otwithstanding the issue of waiver,”
the court of appeals read our opinion in Bowen to stand for the proposition that “an appellate
court should reform the conviction to the lesser-included offense in [only] those situations
where the State has failed to prove an ‘aggravating element’ of the charged offense, but has
met its burden of proof as to the ‘essential elements’ of the lesser included offense.”


 On
the basis of this characterization, the court of appeals deemed Bowen “not relevant to [its]
decision to acquit rather than reform the judgment,” since “[c]oncealment is not an
‘aggravating element’ of the offense of tampering with evidence, it is the very sine qu[a] non
of that offense.”


 Third, according to the court of appeals, “even if Bowen were applicable
to this case, the evidence presented would not be legally sufficient to support a conviction
of attempted tampering with evidence.”


 The court of appeals reasoned that a contrary
conclusion would require “total speculation as to whether or not Appellant had the specific
intent to ‘conceal’ the evidence once he removed it from his pocket, or whether he merely
intended to dispossess himself of it.”



           In its present petition for discretionary review, the State has asked us to review each
of the court of appeals’s justifications for refusing to reform the judgment to reflect a
conviction for attempted tampering. We will address these justifications in turn.
II. ANALYSIS
A. Preservation of Error?
           After determining that the evidence of concealment was legally insufficient, the court
of appeals began its consideration of whether to reform the appellant’s judgment by positing
that “the State waived any error with respect to the trial court’s failure to submit a lesser-included offense by failing to either timely request such a submission or object to the
omission of the issue in the jury charge.”


 We note, as a preliminary matter, that the State
has never objected to, nor complained of, the trial court’s failure to submit a lesser-included
offense instruction. Rather, the State has complained (and continues to complain) of the
court of appeals’s failure to reform the judgment to reflect a conviction for the lesser offense. 
Nevertheless, in their briefs, both parties seem to understand the court of appeals’s reasoning
to be that, by “failing to either timely request such a submission or object to the omission of
the issue in the jury charge” during trial, the State essentially “waived” the right to later
request a reformation of the judgment on appeal.



           Our jurisprudence regarding the availability of judgment reformation after a finding
of insufficient evidence began nearly fifteen years ago, in Collier v. State.


 In Collier, a
four-judge plurality reasoned that an appellate court should not rescue “[t]he [S]tate . . . from
a trial strategy” of “not requesting instructions on lesser included offenses [and expecting
that] the jury will convict an accused of the greater offense rather than let the accused . . . go
scot-free.”


 Unwilling to soften the back-firing effects of the State’s “overreaching,”


 the
plurality concluded that “a court of appeals may reform a judgment of conviction to reflect
conviction of a lesser included offense only if . . . either the jury was instructed on the lesser
included offense . . . or one of the parties asked for but was denied such an instruction.”


 
As neither of those conditions was met in that case, the plurality voted to affirm the court of
appeals’s refusal to reform the judgment of conviction.


 In a concurring opinion, Judge
Keasler noted that he would have allowed courts of appeals to reform judgments to reflect
a conviction for a lesser-included offense only under circumstances in which the “lesser-included offense was submitted in the jury charge.”



           In Haynes v. State, a six-member majority of the Court discerned that “[t]he narrowest
ground upon which” the Collier plurality and Judge Keasler had “agreed is that an appellate
court may . . . reform a judgment to reflect a conviction for the lesser-included offense when
that . . . offense was submitted in the jury charge.”


 In the course of reaching this
conclusion, however, the Court noted that, in the context of double jeopardy, the State is
barred from initiating a subsequent prosecution for a lesser-included offense after an
appellate reversal for insufficient evidence because “[n]othing prevented the State from
requesting a lesser included offense instruction [at trial.]”


 The Haynes majority reasoned
that “the State’s ‘overreaching’ conduct in both the double jeopardy and the reformation
contexts is the same, thus requiring similar treatment and analysis.”


 Thus, while purporting
only to adhere to the narrowest ground agreed upon in Collier, Haynes gave credence to the
notion that reformation is not an appropriate remedy when the State “overreaches” by failing
to ensure that a lesser-included instruction is given at trial.
           The “overreaching” rationale for refusing to reform judgments of conviction thus
persisted in our case law until we came to decide Bowen.


 In Bowen, the appellant was
charged with, and convicted by a jury of, “misapplication of fiduciary property owned by or
held for the benefit of [another] for the value of $200,000 or more.”


 The court of appeals,
while “conclud[ing] that the evidence was legally insufficient to prove that the misapplied
assets . . . equaled $200,000 or more,” found that the evidence was sufficient to prove that
the misapplied assets equaled $103,344.


 However, that court was, at the time it issued its
opinion, “bound by Collier,” and so “did not reform the judgment to reflect a conviction for
a lesser-included offense[,] because a lesser charge was not submitted to the jury.”


 With
no other options available to it, the court of appeals ordered that the appellant be acquitted
outright.


 
           This result, “[w]hile compatible with . . . Collier,” we nonetheless deemed on
discretionary review to be “unjust.”


 We concluded that the “purpose” of the Collier rule,
“which was to prevent the State from overreaching and having an unfair advantage over the
defendant . . . has proved to be unworkable in practice and inapplicable in many instances.”


 
We noted, significantly, that the Collier rationale “does not consider that the defense may
also have a strategic reason to not request a lesser-included offense instruction,” in that “the
defense may hope for outright acquittal” rather than a conviction for a lesser offense.


 We
also observed that the Collier rule could operate to prevent judgment reformation in
circumstances in which the State “requests a lesser-included offense, but the trial court does
not submit the instruction”—and as the State could not be said to be “going for broke” in
such circumstances, the “overreaching rationale” was “impractical[.]”



           In light of all of the shortcomings (unjustness, unworkability, inapplicability, and
impracticality) attendant to refusing to reform convictions on the basis of either party’s
“overreaching,” both the holding of Collier (that the availability of reformation should
depend either on the conduct of the parties at trial or the submission or non-submission of
a lesser-included instruction) and its rationale (that the parties should not be rescued from
their own “gamesmanship” or “overreaching”) were repudiated.


 Thus, post-Bowen, courts
of appeals are no longer permitted to base their decisions whether to reform a judgment of
conviction on either of these considerations. The focus is now on the evidence presented and
the lesser-included conviction sought, rather than the parties’ respective strategies in
failing—or deciding whether—to seek an instruction at trial.
           As a review of the preceding cases should make reasonably clear, nowhere in our case
law, stretching back to Collier, has it ever been suggested that it is the failure to preserve
error that would prevent a party from requesting that a judgment be reformed. But that seems
to have been precisely the court of appeals’s reasoning in this regard. To the contrary, our
case law makes it clear that the availability of reformation turns upon the authority of the
courts of appeals, rather than whether the parties took appropriate steps to invoke that
authority. Prior to Bowen, we held that the courts of appeals were not authorized to intervene
on behalf of “overreaching” parties. In Bowen, we removed this impediment to the authority
of the courts of appeals. Accordingly, the State’s “st[anding] idly by as the trial court denied
Appellant’s request for” a lesser-included instruction had no impact on the authority of the
court of appeals to reform the judgment. The court of appeals retained that authority all
along, and no procedural hurdle stood in the way of its exercising that authority. The court
of appeals erred to suggest otherwise. If reformation is an appropriate remedy in a particular
case (an issue to which we turn next), Bowen makes clear that it should be applied regardless
of whether either party requested or contested—or whether the jury was actually given—an
instruction on the lesser-included offense at trial. The State’s first point of error is sustained.
B. The Applicability of Bowen to “Essential” Elements
           We turn next to the holding of the court of appeals that “Bowen is clearly
distinguishable from . . . this case and . . . is not relevant to our decision to acquit rather than
reform the judgment to reflect a conviction as to the lesser-included offense of attempted
tampering with evidence.”


 The court of appeals identified the rationale of Bowen to be that
“[b]ecause the value of the property misapplied was merely an ‘aggravating element’ used
to determine the degree of the offense, . . . the trial court should have reformed the judgment
to reflect a conviction as to the lesser-included offense.”


 Applying this rationale to the facts
of this case, the court of appeals reasoned that “[c]oncealment is not an ‘aggravating
element’ of the offense of tampering with evidence, it is the very sine qu[a] non of that
offense. As such, Bowen has no application to the facts of this case and we are not bound
to consider whether to reform Appellant’s judgment[.]”



1. Bowen v. State
           The court of appeals correctly recognized that the facts underlying our decision in
Bowen were that “the State failed to prove . . . an aggravating element of the offense, [but]
proved the essential elements of the offense of misapplication of fiduciary property beyond
a reasonable doubt.”


 But the court of appeals failed to properly discern the
reasoning underlying our decision in Bowen—and it is the reasoning, rather than the facts,
of Bowen that should decide its applicability to future cases. The reasoning of Bowen was
that an outright acquittal under those circumstances would be “unjust,” since that result
would involve “usurp[ing]” the “fact finder’s determination of guilt.”


 In other words,
Bowen directed courts of appeals to focus exclusively on what the jury actually found in the
course of convicting the appellant of the greater offense and determined that to discount or
disregard those sufficiently-evidenced findings would be mistaken.
           Extrapolating from that reasoning, we think that the result avoided in Bowen (the
outright acquittal of an appellant against whom the State had adequately carried its burden
except with respect to the extent of an “aggravating element”) is no more “unjust” than an
acquittal in any case in which the jury, by convicting the appellant of the greater-inclusive
offense, necessarily (if implicitly) found every element necessary to convict him for the
lesser-included offense. Any time the State carries its burden with respect to this lesser
offense, and the jury, by its verdict, has necessarily found every constituent element of that
lesser offense, the appellant would enjoy an “unjust” windfall from an outright acquittal.


 
At the same time, courts of appeals should limit the use of judgment reformation to those
circumstances when what is sought is a conviction for a lesser offense whose commission
can be established from facts that the jury actually found. To do otherwise would be to usurp
the jury’s institutional function in the criminal justice system—to determine the facts. 
Reviewing courts should not, therefore, inquire as to (much less purport to find) what the jury
could have found had it been tasked with making a finding that it was not originally asked
to make; this would be inconsistent with Bowen’s deference to jury determinations.



           As our recent opinion in Britain v. State makes clear, however, simply establishing
that the jury’s guilty verdict as to the greater offense also constitutes a jury finding of the
elemental predicates for a conviction of the lesser offense is not necessarily sufficient to
justify reformation under Bowen.


 In Britain, the appellant was convicted of manslaughter
for her allegedly reckless handling of her step-daughter’s medical emergency.


 The court
of appeals in that case ordered that the appellant be acquitted, as there was “insufficient
evidence that the appellant was aware of but consciously disregarded a substantial and
unjustifiable risk” of death.


 On discretionary review, we rejected the State’s argument that
the court of appeals should have “reformed the verdict to the lesser-included offense of
criminally negligent homicide,” because in our view the State had also failed to produce any
“evidence concerning the standard of care an ordinary person should be held to or that
showed the appellant should have been aware of the risk to [the step-daughter].”


 We
cautioned that “an appellate court should not render a judgment of conviction for a lesser-included offense unless there is proof beyond a reasonable doubt of all elements of the
lesser-included offense.”


 We noted that automatically reforming the judgment to a
conviction for the lesser offense, without reviewing the sufficiency of the evidence to support
the new conviction, ran the risk of allowing “whatever error led to the” conviction for the
greater offense to also “extend to” the conviction for the lesser.



           In summary, then, after a court of appeals has found the evidence insufficient to
support an appellant’s conviction for a greater-inclusive offense, in deciding whether to
reform the judgment to reflect a conviction for a lesser-included offense, that court must
answer two questions: 1) in the course of convicting the appellant of the greater offense,
must the jury have necessarily found every element necessary to convict the appellant for the
lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the
appellant had been convicted of the lesser-included offense at trial, is there sufficient
evidence to support a conviction for that offense? If the answer to either of these questions
is no, the court of appeals is not authorized to reform the judgment. But if the answers to
both are yes, the court is authorized—indeed required


—to avoid the “unjust” result of an
outright acquittal by reforming the judgment to reflect a conviction for the lesser-included
offense.
2. Application
           With these concepts in mind, we must determine whether the jury, in the course of
finding the appellant guilty of actual tampering with evidence, necessarily found all of the
elements of attempted tampering with evidence. A person commits the offense of tampering
with evidence “if the person[,] . . . knowing that an offense has been committed, alters,
destroys, or conceals any record, document, or thing with intent to impair its verity, legibility,
or availability as evidence in any subsequent investigation of or official proceeding related
to the offense.”


 A person commits an attempt if, “with specific intent to commit an offense,
he does an act amounting to more than mere preparation that tends but fails to effect the
commission of the offense intended.”


 Synthesizing these statutory definitions, we conclude
that the first prong of the reformation analysis described above can be answered in the
affirmative only if the jury, by its verdict, must necessarily have found that, 1) knowing that
an offense had been committed, and with 2) the specific intent to conceal the crack pipe,



and 3) the specific intent to impair the availability of the crack pipe as evidence in a later
investigation or proceeding, the appellant 4) did an act amounting to more than mere
preparation that 5) tended but failed to result in concealment of the crack pipe.
           With respect to the first three of these elements, we note that the jury explicitly found
these to have been proven when it found the appellant guilty of actual concealment, and so
we need not inquire as to whether the jury made an implied or logically-necessary finding as
to either of them.


 Similarly, with respect to the fourth element, we have no difficulty in concluding that the jury must have found this predicate-element to attempted
tampering—an act amounting to more than mere preparation—to have been proven, since
it found that his intentional conduct succeeded in concealing the pipe.



           With respect to the fifth element—whether the actions of the appellant “tend[ed] but
fail[ed]” to effect the commission of the offense intended—we note that under Section
15.01(c) of the Penal Code, “[i]t is no defense to prosecution for criminal attempt that the
offense attempted was actually committed.”


 Thus, in inquiring whether the jury necessarily
found that the appellant’s conduct failed to effectuate concealment, we need not inquire as
to what the jury could have found, had it been tasked with adjudicating the appellant’s guilt
as to attempted tampering. Instead, we need only note that, by operation of Section 15.01(c),
the jury’s finding of actual commission subsumes a finding that the appellant’s conduct
“tend[ed] but fail[ed]” to effect the commission of tampering with evidence. And in this
sense, the jury must necessarily have found that the appellant’s actions “tend[ed] but
fail[ed].”



           Hence, in the course of convicting the appellant of tampering with evidence, the jury
must necessarily (if implicitly) have found that, knowing that an offense had been committed,
and with the dual specific intents to conceal the crack pipe and impair the availability of the
crack pipe as evidence in a later investigation or proceeding, the appellant did an act
amounting to more than mere preparation that tended but failed to result in concealment of
the crack pipe. For this reason, the court of appeals erred to conclude that Bowen has no
applicability to the facts of this case. The State’s second point of error is sustained.
C. Sufficiency of the Evidence to Show Attempted Tampering
           Having determined that the jury’s guilty verdict as to tampering with evidence
necessarily constitutes a finding that the appellant attempted to tamper with evidence, we turn
now to the question of whether there is sufficient evidence to support a conviction for
attempted tampering.


 The court of appeals decided that there is not, primarily on the basis
that the State failed to point to any “evidence of a specific intent to conceal” the pipe rather
than “merely . . . dispossess himself of it.”


 Finding the evidence to be legally sufficient to
support a rational jury finding as to this element, we will reverse the court of appeals as to
this holding as well.
           In inquiring whether a conviction is supported by sufficient evidence, our task is to
“determine whether the record evidence could reasonably support a finding of guilt beyond
a reasonable doubt.”


 The relevant question “is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.”


 Under our case law,
“[v]iewing the evidence ‘in the light most favorable to the verdict’ . . . means that the
reviewing court is required to defer to the jury’s credibility and weight determinations[.]”


 
We should take care, in other words, not to act as a “thirteenth juror” by overturning a jury’s
duly-delivered verdict simply because we “‘disagree’ with [that] verdict.”



           In this case, we are satisfied that the evidence, viewed in the light most favorable to
the verdict, is sufficient to support a jury finding that the defendant harbored the specific
intent to conceal the crack pipe and thereby impair its later availability as evidence. We
discussed many of the issues relating to the sufficiency of evidence to show an actor’s
specific intent to commit an offense in Laster v. State.


 In Laster, the jury was presented
with evidence that the defendant, while walking past a young girl and her brother on a non-secluded sidewalk, “put his arm around [the girl’s] waist and tried to pull her away.”


 The
jury was also able to read a written statement from the defendant about “the voices in my
head [telling] me to grab the little girl.”


 On the basis of this evidence alone, the jury
convicted the defendant of attempted aggravated kidnapping. We were called upon to review
whether the evidence was “sufficient to prove that [the defendant] had the intent to hold or
secrete [the victim] in a place where she was unlikely to be found.”


 In concluding that the
evidence was indeed sufficient, we emphasized that, while “[c]ircumstantial evidence of
intent must be reviewed with the same scrutiny as other elements of an offense,” we would
no longer insist on “[e]xcluding every reasonable hypothesis of what the accused was
thinking.”


 Importantly, “[a]s long as the verdict is supported by a reasonable inference, it
is within the province of the factfinder to choose which inference is most reasonable.”


 In
her dissenting opinion, Judge Cochran voiced a helpful insight that the majority did not
contest: “[N]ot every grabbing or illegal restraint of a stranger . . . evinces an intent to
kidnap.”



           Similarly, in cases of tampering with evidence, not every act of discarding an object
evinces an intent to impair the availability of that object as evidence in a later investigation
or proceeding. There may be cases in which the most inculpating inference the evidence
would support is that the accused simply intended to dispossess himself of the object in order
to more plausibly disclaim any connection to it.


 And while it is true that “it is within the
province of the factfinder to choose which inference is most reasonable,”


 it is also true that
any inference made by the jury must be supported by sufficient evidence.


 Unlike the court
of appeals, however, in this case we believe that the inference of a specific intent to impair
the pipe’s availability as evidence is sufficiently supported by the evidence presented at trial.
           First, the jury heard evidence that 1) the crack pipe was both made of glass and
smaller than a pen, and 2) at the time of the alleged tampering, “[t]he sun was coming up.” 
We note that it would be reasonable for the jury to conclude that, if the circumstances were
such that the appellant stood absolutely no chance of concealing the pipe from the officers,
it is less likely that he would have formulated the intent to conceal the pipe from the officers. 
In other words, it is less likely (though not impossible) that the appellant would harbor a
“conscious objective” to cause a result he knew to be impossible.


 Therefore, the
reasonableness of the jury’s inferences about the appellant’s intent is informed (at least in
some measure) by whether the jury could have reasonably inferred that the appellant believed
that the pipe was, in fact, concealable. 
           From testimony about the pipe’s material composition and size, the jury might
reasonably have inferred that the pipe was lightweight and at least somewhat translucent;
from testimony that “[t]he sun was coming up,” the jury might reasonably have inferred that
the portion of the sidewalk where the appellant dropped the pipe was not particularly well-lit. 
Based on these facts, the jury might also reasonably have inferred that the appellant did, in
fact, believe it possible to conceal the pipe from the police—even if it lay in the middle of
the sidewalk.


 On the other hand, if the evidence alleged to have been concealed were, say,
a neon pink bowling ball dropped at high noon, the jury would have had far less reason to
accept an inference that the appellant intended to conceal the evidence from the police.
           Second, when the State asked Roberts whether the appellant “stealthily reached in [to
his pocket],” Roberts responded affirmatively.


 While not conclusive, testimony that the
appellant had a “stealth[y]” demeanor as he attempted to dispose of the crack pipe would
support a finding that he intended that the officers never notice the pipe. And while evidence
of the appellant’s “stealthi[ness]” in reaching for the pipe is not inconsistent with a simple
intent to dispossess, it would be inappropriate to adopt this alternative “reasonable
hypothesis” on the basis of evidence that could be interpreted—equally reasonably—in one
of two ways.


 After all, we are tasked with viewing the evidence in the light most favorable
to the verdict.
           Lastly, the jury also heard evidence—on multiple occasions—that the appellant
“palmed” the pipe as he removed it from his pocket. The State argued both at trial and on
appeal that, in the brief amount of time that the appellant successfully hid the pipe from
Roberts’s view by “palming” it, the appellant had “conceal[ed]” the pipe, as that term is used
in Section 37.09(d)(1) of the Penal Code. While we express no opinion as to whether the
“palming” of evidence can constitute actual concealment, we do think that repeated
testimony that the appellant “palmed” the pipe is probative evidence of an intent to conceal
the pipe. The jury would not have been unreasonable in thinking that by “palming” the pipe,
the appellant’s actions betrayed a “conscious objective” to prevent the officers from ever
noticing the pipe. It would also have been reasonable for them to discount the fact that
Roberts never lost sight of the pipe, since the element currently under consideration is the
appellant’s mens rea—not his success (or lack thereof) at actual concealment.



           Having reviewed the evidence presented at trial and determined that the same is
sufficient to support a rational jury finding that the appellant harbored the specific intent to
conceal evidence, we conclude that there is sufficient evidence to support a conviction for
attempted tampering with evidence.


 In light of this conclusion, we hold that the court of
appeals erred to conclude that “no rational trier of fact could have found that Appellant
attempted to conceal evidence of any kind.”


 The State’s third point of error is sustained.CONCLUSION
           The court of appeals provided three independent justifications for refusing to reform
the appellant’s judgment of conviction to reflect a conviction for attempted tampering with
evidence: 1) that the State “failed to preserve” the issue of reformation; 2) that Bowen “has
no application to the facts of” the appellant’s case; and 3) that the evidence presented at trial
is “not legally sufficient to support a conviction of attempted tampering with evidence.”


 
Each of these justifications fails to withstand scrutiny, and we therefore reverse the judgment
of the court of appeals. The cause is remanded to the trial court to reform the judgment to
reflect a conviction for the offense of attempted tampering with evidence and to hold a
punishment hearing attendant to this post-reformation conviction.
 
DELIVERED: APRIL 2, 2014
PUBLISH